IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 03-cv-01690-WDM-BNB

RYAN E. BECK,

    Petitioner,

v.

E.J. GALLEGOS,

    Respondent.

## ORDER ON RECOMMENDATION OF MAGISTRATE JUDGE

Miller, J.

This matter is before me on the recommendation of Magistrate Judge Boyd N. Boland, issued September 26, 2005, that Petitioner Ryan E. Beck's (Beck) application for a writ of habeas corpus, filed September 4, 2003, be denied. Beck filed a timely objection to the recommendation, and is entitled to de novo review on those issues he specifically objects to. 28 U.S.C. § 636(b); *Summers v. Utah,* 927 F.2d 1165, 1167 (10th Cir. 1991). Having reviewed the application, response, recommendation, objection, and evidence presented at evidentiary hearings on June 13, 2005 and August 8, 2005, I will accept the recommendation as discussed below.

### Background

In August 2002, Beck was imprisoned at a Federal Correctional Institute in Pekin, Illinois (FCI Pekin). On August 20, 2002, Lieutenant Pagli (Lt. Pagli), the Special Investigative Supervisor (SIS) at FCI Pekin was investigating an alleged

violation of prison regulations — a racially motivated group demonstration during the evening meal of August 19, 2002.  During his investigation, Lt. Pagli interviewed Beck about the incident, and accused him of leading the demonstration.  Beck claims that during this interview, Lt. Pagli showed him video footage of the incident, but when Lt. Pagli saw that it was someone else on the video, he shut it off and proceeded to question him further.  (Hr'g Tr., Aug. 8, 2005, at 8.)

On September 20, 2002, Lt. Pagli completed his investigation and issued a report identifying Beck as the leader of the demonstration.  Beck was provided with a copy of the report on September 26, 2002, and the Unit Disciplinary Committee (UDC) held a hearing on the matter on September 27, 2002.  The UDC referred the matter to a Disciplinary Hearing Officer (DHO) for further a further hearing that was held on October 4, 2002.  Prior to the hearing, Beck requested in writing that the video be viewed, because "[i]t can show that I was not involved."  (Notice of Disciplinary Hr'g, Ex. A6 to Answer.)  Nonetheless, the video was not shown at the hearing, and the DHO apparently never viewed the video.  In his opinion finding Beck guilty of the charges, the DHO discussed the video as follows: "You went on to state that you wanted the tape.  The DHO considered this and notes that the SIS Report reflects that you were observed on tape directing inmates where to sit.  The DHO is basing the decision on the eyewitness account of staff."  (DHO Op., Ex. A9 to Answer, at 3.)

At an evidentiary hearing before Magistrate Judge Boland held on June 13, 2005, Lt. Pagli testified that the video was not shown at the DHO hearing because at the time, security footage was regularly recorded over after about a week's time —

unless it was specifically saved. Although Lt. Pagli testified that it was normal procedure to save footage that might be evidence in *criminal* charges, but not footage that might be used in *administrative* proceedings. According to Beck, this testimony, two years and eight months after his DHO hearing, is the first time he was ever told that the tape was erased prior to his hearing.

In his application for a writ of habeas corpus Beck claims that he was denied his procedural due process rights for three reasons: (1) the DHO refused to allow him to show the video;[1] (2) prison officials failed to provide him with written notice of the charges against him within twenty-four hours after staff became aware of his involvement in the incident; (3) prison officials failed to provide him with a UDC hearing within three working days after staff became aware of his involvement with the incident.

## Discussion

It is well established that prisoners facing the deprivation of good time credits are entitled to minimum standards of due process, even though they do not enjoy the full panoply of rights afforded defendants in a criminal trial. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). And though the law has not yet clearly defined the extent of prisoners' rights regarding potentially exculpatory evidence in prison disciplinary proceedings, it is clear that their rights are no more extensive those of criminal defendants. *See Griffin v. Spratt*, 969 F.2d 16, 20 (3d Cir. 1992).

In a criminal trial, the showing required to establish that the government's failure

---

[1] Beck's claim is apparently phrased this way because at the time of his application, he did not know that the video was erased prior to his DHO hearing.

to preserve evidence violates the Due Process Clause varies with the nature of the evidence in question. If the defendant can show that the exculpatory significance of the evidence is apparent to authorities before its destruction, then a violation is established unless the defendant could "obtain comparable evidence by other, reasonably available means." *United States v. Bohl*, 25 F.3d 904, 909-910 (10th Cir. 1994) (citing *California v. Trombetta*, 467 U.S. 479, 489 (1984)). However, if the defendant can prove no more than the evidence's potential exculpatory value, then there is no Due Process Clause violation absent proof of bad faith by the government. *Id.* at 910 (citing *Arizona v. Youngblood*, 488 U.S. 57-58 (1988)). In applying this standard, Magistrate Judge Boland implicitly found that the exculpatory value of the video was not apparent before its destruction. And, because he found that the video was overwritten in the normal course of business before the DHO hearing, he found no bad faith.

Beck objects, arguing that the record contains substantial evidence of bad faith. Generously construed, Beck's argument is that Lt. Pagli's testimony is not credible because even though he testified that security footage is saved if it will be used in criminal proceedings, Beck's video was overwritten about three weeks prior to when prison officials decided whether to pursue criminal charges (at the DHO hearing). Beck claims that the real reason that the video was erased was to cover up exculpatory evidence.

After reviewing the application, response, recommendation, objection, and evidence presented at both evidentiary hearings, I find that Beck has failed to show that the exculpatory value of the video was apparent to prison officials before it was

overwritten. In addition, I find that the video was overwritten in the normal course of business, and that Beck has failed to prove bad faith. Accordingly, prison officials failure to preserve the video does not constitute a Due Process Clause violation.

As for the other due process claims — regarding the timeliness of his notice and hearing — Beck does not object to Magistrate Judge Boland's finding that any inadequacies in this regard do not rise to the level of a Due Process Clause violation. For substantially the reasons given in the recommendation, I agree.

Accordingly, it is ordered that Petitioner's application for a writ of habeas corpus, filed September 4, 2003 (Docket No. 2), is denied.

DATED at Denver, Colorado, on February 1, 2006.

BY THE COURT:


s/ Walker D. Miller
United States District Judge